UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANADARKO E & P ONSHORE, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-03168 |
| | § | |
| MARY MARSHALL SMITH TRUST UNDER | § | |
| WILL DATED OCTOBER 24, 1977, FBO | § | |
| KATHARINE M. MARSHALL, WELLS | § | |
| FARGO BANK, N.A., TRUSTEE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION AND ORDER**

Pending before the Court are Defendants' Motion for Final Summary Judgment, Doc. 56, and Defendant Smith Foundation's Conditional Motion for Summary Judgment, Doc. 57. All Defendants join in the Motion for Final Summary Judgment, Doc. 56, as to the Plaintiff's primary liability claims. These Defendants include: Mary Marshall Smith Trust Under Will Dated October 24, 1977, Wells Fargo Bank, N.A., Trustee; Mary Marshall Smith Trust Under Will Dated October 24, 1977, FBO Katharine M. Marshall, Wells Fargo Bank, N.A., Trustee; Mary Marshall Smith Trust Under Will Dated October 24, 1977, FBO Margaret Murdoch, Wells Fargo Bank, N.A., Trustee (together, the "Beneficiary Trusts," or the "Trusts"); and the Pete and Sally Smith Foundation, Wells Fargo Bank, N.A., Trustee (the "Foundation").

Also pending before the Court is Plaintiff Anadarko E & P Onshore, LLC's ("Anadarko") Motion for Partial Summary Judgment, Doc. 58. Having considered these motions, the responses, the replies, the facts in the record, and the applicable law, the Court concludes Defendants' Motion for Summary Judgment, Doc. 56, should be granted, making moot the Smith Foundation's Conditional Motion for Summary Judgment, Doc. 57. Plaintiff's Motion for

Partial Summary Judgment, Doc. 58, should be denied.

## I. Factual Background

The factual background giving rise to this case is complex. After Donavan D. Smith, known also as "Pete" Smith, passed away, his widow, Mary Marshall Smith, also called "Sally" Smith, died in 1992. Her will, dated October 24, 1977, and a codicil, dated August 24, 1987, created a residuary trust, the "Mary Marshall Smith Trust," and the trust assets were distributed into two jointly managed "Beneficiary Trusts," i.e., the "Mary Marshall Smith Trust for the benefit of Katharine M. Marshall" for the lifetime of her sister Katharine, and the "Mary Marshall Smith Trust for the benefit of Margaret Murdoch," for the lifetime benefit of her other sister, Margaret. After the deaths of these two sisters, the remaining principal and undistributed income in the Beneficiary Trusts were combined into the "Mary Marshall Smith Trust," which, according to terms of the Will, was to be known as the "Pete and Sally Smith Foundation." Thus all these entities are identities of the Mary Marshall Smith Trust at different times, according to the conditions and accounting requirements in the Will. At all relevant times, Wells Fargo Bank, N.A. served as Trustee or Co-Trustee of these entities. For simplicity, the Trusts will be treated together, as they share a complete commonality of interest following the death of Mrs. Murdoch and they signed identical leases and division orders with Anadarko, save their differing ownership percentages.

During her life, Margaret Murdoch, who was co-Trustee with Wells Fargo of her Beneficiary Trust, purportedly decided to name the Michigan 4-H Foundation and Michigan State University as the final beneficiaries of the Mary Marshall Smith Trust after she died. When she passed away in 2009, the Beneficiary Trusts terminated, and Wells Fargo became the sole Trustee of the Trusts, now to be known as the "Pete and Sally Smith Foundation." The Trustee

then authorized the trust assets to be distributed within three years by charitable gifts to qualifying nonprofit organizations. Alternatively, the Will permitted the incorporation of the Pete and Sally Smith Foundation as a private charitable foundation, with the remaining assets transferred to it and with distributions from it to be effected within three years.

While the Beneficiary Trusts were still in existence, the Mary Marshall Smith Trust held mineral interests on property in Dimmit County, Texas, located on Lots Two, Three, Six and Seven in Block 184, Subdivision "L" in the Taft-Catarina Properties Subdivision, composed of approximately 320 acres known as the "Briscoe Friday Smith" tract (hereinafter "the Smith Tract"). In 2010 Anadarko, an exploration and production company, obtained oil and gas leases of the Trusts' mineral interest in the Smith Tract from Wells Fargo, which executed the leases as Trustee of the Mary K. Marshall Smith Trust FBO Katharine M. Marshall and FBO Margaret M. Murdoch. These leases covered the 320 acre Smith Tract.

Surrounding and including the Smith Tract is a 5,468.9 acre tract known as the "Briscoe Family Ranch" (hereinafter the "Ranch"), in which the Beneficiary Trustees had no mineral or royalty interests beyond their interest in the Smith Tract, and in which unrelated third parties hold the mineral interests. Some of the owners of the Ranch are co-owners of the Smith Tract.

Anadarko's first oil well, well 1H, was drilled on the Ranch, but not on the Smith Tract. Mistakenly, Anadarko drafted and sent division orders for this well to the Trusts, calculating the Trusts' shares as if the Smith Tract had been pooled with the others tracts of the Ranch. In fact, the Smith Tract was never formally pooled with the other tracts of the Ranch. Wells Fargo signed these division orders and Anadarko paid the Trusts according to the terms of the division orders.

Several more wells were drilled on the Ranch property, but not on the Smith Tract, and Anadarko provided notice of each subsequent well in accounting statements sent out along with royalty checks to royalty recipients, including the Trusts. Subsequent division orders were not issued for these subsequent wells, according to industry custom. Anadarko's mistaken royalty payments to the Trusts for these wells located on the Ranch, but not on the Smith Tract, were made from March 25, 2011 through December 31, 2013. The multiple checks sent to Wells Fargo as Trustee of the Mary Marshall Smith Trust FBO Katharine Marshall for production from these wells totaled $1,238,143.59, while those for the Mary Marshall Smith Trust Fund FBO Margaret Murdoch amounted to $412,716.03.

Meanwhile, the Beneficiary Trusts were united into the Mary Marshall Smith Trust (a/k/a the Pete and Sally Smith Foundation, before its incorporation), and the payments were placed in that Trust by operation of law. Trustee Wells Fargo purportedly did not know of Margaret Murdoch's attempts to name the Michigan 4-H Foundation as the beneficiary of her Trust and disputed Michigan 4-H's claims, moved to retain all the assets, and sought to incorporate the Trust as the Pete and Sally Smith Foundation, which could continue into perpetuity. Michigan 4-H, on the other hand, tried to obtain all of the trust assets as a charitable gift to itself from Mrs. Murdoch. On August 29, 2011, the Trustee filed suit against the Michigan 4-H Foundation, Michigan State University, and the State of South Carolina, in a Greenville County, South Carolina state court, where Mary Marshall Smith's will was probated.

On December 12, 2013 the parties settled the claims arising among themselves, which included the payment and conveyance of $2.25 million in Trust assets and a 33.33252 percent portion of the not-yet-incorporated Pete and Sally Smith Foundation's Dimmit County, Texas oil, gas and mineral interests in the Smith Tract to Michigan 4-H. To fund the $2.25 million cash

payment accepted by the Michigan 4-H Foundation as part of the settlement, the Trustee used some of Anadarko's mistaken royalty payments from the Ranch oil and gas wells and leases.

In addition the Mary Marshall Smith Trust and the Pete and Sally Smith Foundation were reformed and incorporated into the Pete and Sally Smith Foundation in perpetuity, and the remaining assets of the Mary Marshall Smith Trust were formally gifted to the incorporated foundation, with Wells Fargo named the Trustee and awarded past and future pay for its services as Trustee. The parties then released all claims against each other. The Michigan 4-H Foundation was originally a defendant in this action but was dismissed for lack of personal jurisdiction. Doc. 49.

At some point after Anadarko discovered its mistake, it made payments to the third-party royalty interest owners of the Ranch to make them whole. On or around April 14, 2014, Anadarko notified Trust Asset Manager Jonathan Johnson, an employee of Wells Fargo Bank, N.A., of the erroneous payments to the Beneficiary Trusts and asked that Wells Fargo return the funds, but Wells Fargo has refused to pay Anadarko. The parties have stipulated to these facts. Doc. 53.

## II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Initially the moving party bears the burden of identifying evidence that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point

to the absence of evidence supporting an essential element of the nonmovant's case; it does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmovant then can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49.

## III.    Discussion

Anadarko asserts two claims appropriate for resolution through summary judgment: (1) breach of contract and (2) fraudulent transfer under the Texas Uniform Fraudulent Transfer Act. The fraudulent transfer claim is predicated on a finding that Anadarko is a creditor of the Trusts or the Foundation.   Defendants assert that Anadarko's claim for breach of contract fails as a matter of law, and therefore, Anadarko is not owed money by the Trusts or the Foundation and is not a creditor of the Trusts or the Foundation.

Defendants move for summary judgment on three issues: (1) Anadarko's breach of contract claim fails as a matter of law, (2) Anadarko's claim for money had and received fails as a matter of law, and (3) Anadarko is not entitled to recovery attorney's fees.

### A.    *Breach of Contract*

#### 1. Payments made under division orders are final and binding

"The general rule is that division orders are binding until revoked."  *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 123 (Tex. 1996); *see also Exxon Corp. v. Middleton*, 613 S.W.2d 240, 250 (Tex. 1981) ("[U]nder well-settled law . . . these instruments were binding for the time the parties acted under them.").  Courts have held that even when one party is overpaid and another party is underpaid, the payments made under the division order are final as between the payor and the payee until the division order is revoked.  *Gavenda v. Strata Energy, Inc.*, 705

S.W.2d 690, 692 (Tex. 1986). In other words, the underpaid party cannot sue the operator to recover the amount it is rightfully owed.

There is an exception to this rule when the operator is unjustly enriched as a result of the erroneous division order. *Id*. Here, that is not the case: Anadarko has not kept any of the royalties meant to be distributed among the owners. Therefore, this set of facts does not fall within the *Gavenda* exception to the general rule that payments made under a division order are binding.

One purpose of the rule that division orders are binding until revoked is to protect parties' reliance on the contracts. Most frequently, this has manifested as a protection for operators who rely on the divisions stated in the division orders when paying out royalties. *See id*. Operators are entitled to rely on the amounts specified in division orders and cannot be sued by owners paid according to those orders. While the recipient of the excessive payment may be liable to the party whose payment was less than that to which he was entitled, that situation is not at play here; this action is solely between the payor and the payees. *Allen v. Creighton*, 131 S.W.2d 47, 50 (Tex.Civ.App.—Beaumont 1939, writ ref'd).

The Court recognizes that the law that has developed around the finality of division order payments has favored protecting the operators, and here it is the operator seeking to be repaid. However, the purpose of these developments was to protect the operator from suit by the underpaid party. Anadarko does not need that protection here. The Court declines to extend the current case law to act as a sword for the operator rather than serving as a protective shield. Thus the payments between Anadarko and the Trusts made in accordance with the division orders are binding and final.

## 2. Anadarko cannot recover for breach of contract

### i. The indemnity clause is not applicable

Anadarko asserts that nevertheless, the Trusts must pay back to Anadarko the amounts they were overpaid under a breach of contract theory. Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury. *Garza v. Southland Corp.,* 836 S.W.2d 214, 219 (Tex.App.—Houston [14th Dist.] 2003, no pet.). Anadarko argues that the Trusts must repay the money under of the terms of the contract itself—specifically, the indemnity and reimbursement clauses in the division order—and by failing to do so they have breached the contract and owe Anadarko damages. There are two such indemnity clauses: one in the original division order and another in the addendum with slightly different wording. The Court interprets the clause in the addendum to be the relevant one, since the addendum states that "the terms and conditions . . . in the Division Order as hereby superseded and supplanted as follows." Doc. 53, ex. E. This indemnity and reimbursement clause provides:

> Owner agrees to indemnify and reimburse Payor for payments made to Owner in accordance with this DO if Owner does not have merchantable title to the oil and gas attributable to the Owner.

*Id.*

This indemnity clause does not apply to the facts of this situation for several reasons. First, this is not a case of failure of title. The leases attributed title of the Smith Tract to the Trusts, and the Trusts do indeed have merchantable title to the Smith Tract. Doc. 53, ex. B. The fact that Anadarko mistakenly pooled the Smith Tract with the Ranch in calculating royalties owed does not negate the Trusts' good title. Since the owner does have merchantable title to the oil and gas attributable to it, the reimbursement clause is not applicable.

Second, considering the plain language of the contract, the Trusts have properly

certified their true ownership percentages.  *See Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d

936, 938 (Tex.1984) (favoring a plain meaning approach to contract interpretation where

appropriate).  The division order addendum states:

> The interest owner ("Owner") severally and not jointly certifies it is the legal
> owner of the interest set out in the DO of all oil, gas and related liquid or gaseous
> hydrocarbons.

Doc. 53, ex. E.  The division order for the Trust FBO Katharine Marshall lists the "Property

Name" as "Briscoe Friday Ranch 1H" and the "Interest Amt/Type" as "0.00548556 / RI."  The

division order for the Trust FBO Margaret M. Murdock contains the same terms but the interest

amount is 0.00182852.  Hence, by signing the division order, the Trustee certified that the Trusts

together have a 0.00731408 royalty interest in "the Ranch."

        In its complaint, Anadarko asserts that Wells Fargo as trustee "knew full well" that the

Trusts owned no mineral interest in the Ranch tract.  Sec. Am. Comp., Doc. 25, ¶ 16.  However,

Anadarko has provided different, conflicting definitions of the Ranch even during the course of

this lawsuit.  Initially, Anadarko describes the Ranch as the tract surround the Smith Tract, but

not including it.  Anadarko states: "The Beneficiary Trusts held no property interest, no mineral

or royalty interest in, no merchantable title, and no right to receive royalties for any oil and gas

or other minerals from the Ranch." *Id*. at ¶ 15.  Yet, in Plaintiff's Response to Defendant's

Motion for Final Summary Judgment, Anadarko states that the Ranch actually encompasses and

includes the Smith Tract.  Doc. 61 at 2, 8-9.  This would mean that the Defendants do indeed

own some mineral interest in some portion of the Ranch tract, namely, in the Smith Tract.

Mathematically, the interests stated on the division order accurately reflect this percentage.  *See*

Doc. 58 at 17 n.6 (demonstrating the calculations).

Additionally, as a policy matter, the purpose of such an indemnity clause is to protect the operator in cases where there is a failure of title of the parties to the division order, which may lead to an action by the rightful owner against the operator, subjecting the operator to double liability.[1] Here, the Trusts and co-owners do have merchantable title to the land in question, and Anadarko is not at risk of being held liable by an unknown party claiming true title to the Ranch or Smith Tract. Therefore, because the owner does have merchantable title, the indemnity and reimbursement clause for failure of merchantable title is not invoked.

## ii. The elements for a breach of contract claim have not been shown

Furthermore, Anadarko has not shown all four elements of a breach of contract claim required for recovery. "To recover for breach of contract, a plaintiff must show (1) the existence of a valid contract, (2) the plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result of defendant's breach." *Parker Drilling Co. v. Romfor Supply Co*., 316 S.W.3d 68, 72 (Tex.App.—Houston [14th Dist.] 2010, pet. denied). Even assuming the Trusts do have an obligation to repay Anadarko and have breached the contract by not adhering to this obligation, Anadarko has not shown that it sustained damages *as a result of* such a breach. *See Braselton-Watson Builders, Inc. v. Burgess*, 567 S.W.2d 24, 28 (Tex.Civ.App.—Corpus Christi 1978, pet. ref'd n.r.e.) ("In general, the right to recover compensatory damages for the breach of a contract will be defeated if . . . the damages which he sustained did not result from the breach."). Anadarko would not be out money, and would not have suffered damages, had it not voluntarily acted to later pay the co-owners more than what they were owed under the terms of their division orders. Since the damages sustained

---

[1] "The purchaser of oil or other products from a person not entitled thereto may be liable as a converter to the rightful owner. Breach of the warranty contained in the division or transfer order by reason of failure of the title of the parties thereto will support an action by the purchaser against his vendor in the event the purchaser is held liable in damages to the rightful owner of the products." HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 704.1 (2016).

by Anadarko were not a result of the Trusts' alleged breach, but a result of Anadarko's own voluntary actions, Anadarko cannot recover for breach of contract.

### B. Money Had and Received

Anadarko does not have standing to assert a claim for money had and received. The treatment afforded division orders under Texas law requires underpaid royalty owners to seek their recovery from overpaid royalty owners through an unjust enrichment action. The operator is protected from claims on the premise that it has paid out the entirety of the royalty interest to one or more royalty interest owners and should not have double liability. *Gavenda*, 705 S.W.2d at 692. If the operator retains an amount that should have been paid to a royalty interest owner, then the underpaid royalty interest owner may recover that amount from the operator. *Id*. Anadarko never retained any amount that should have been paid to a royalty owner. Any overpayment of royalties to the Trusts was owed in equity, justice, and law to the underpaid royalty interest owners, not to Anadarko. Anadarko does not have standing under its own claim for money had and received.

Nor is Anadarko entitled via equitable subrogation to assert the unjust enrichment claims of the co-owners. At some point after discovering the error in the division order, Anadarko made payments to the underpaid royalty interest owners for the amounts they were lacking. Equitable subrogation is a claim that must be pled. *E.g., Monk v. Dallas Brake & Clutch Serv. Co*., 697 S.W.2d 780, 782 n.2 (Tex. App.—Dallas 1985, writ ref'd n.r.e). Anadarko did not plead equitable subrogation and therefore is not entitled to recover under that theory.

Furthermore, under Texas law,

The doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing. Texas courts interpret this doctrine liberally. Although the doctrine most often arises in the insurance context, equitable subrogation applies "in every

> instance in which one person, *not acting voluntarily*, has paid a debt for which
> another was primarily liable and which in equity should have been paid by the
> latter." Thus, a party seeking equitable subrogation must show it *involuntarily*
> paid a debt primarily owed by another in a situation that favors equitable relief.

*Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd*., 259 S.W.3d 140, 142 (Tex. 2008) (emphasis added).  Anadarko had not retained any amounts that were required to be paid out to royalty interest owners. Therefore, the payments Anadarko made to the co-owners to make them whole were made voluntarily.  Anadarko paid the amounts to the co-owners with full knowledge of the facts and such payments were made in the absence of fraud, deception, duress, or compulsion.  Anadarko is not entitled to prosecute the unjust enrichment or money had and received claims belonging to the co-owners because Anadarko's payments of the amounts owed to the co-owners were made voluntarily.

Additional equitable principles support the Court's finding.  Anadarko drafted and prepared the erroneous division orders. Doc. 58 at 6.  Anadarko personnel became aware of the mistake in December 2012 yet continued to make payments according to the division orders for another year.  Doc. 56, ex. 1 at 36.  Based on the division order and the continuous payments Anadarko made to the Trusts, the Trusts overvalued their assets and made settlements in a separate litigation in reliance on these valuations.  Doc. 53 at ¶ 14-15.

As a final note, Anadarko points out that it is industry norm for an overpaid party to cooperate in rectifying the situation.  Doc. 58 at 21.  The Court's decision here should not change or affect that custom: This holding does not mean the Trusts have an unequivocal right to keep the money they were overpaid.  The Court is merely considering the specific claims brought before it as between the plaintiff and the defendants and making a ruling on those claims based on the law.

### *C. Fraudulent Transfer*

Since the court found there was no breach of contract and no claim for money had and received, Anadarko's claims that the Trusts gifts to the Foundation were fraudulent also fail.

### *D. Attorney's Fees*

Since the court found there was no breach of contract, Anadarko is not entitled to recover attorney's fees.

## IV.   Conclusion

For the foregoing reasons, it is hereby ORDERED that the Defendants' Motion for Final Summary Judgment, Doc. 56, is GRANTED and Plaintiff's Motion for Partial Summary Judgment, Doc. 58 is DENIED.   The Smith Foundation's Conditional Motion for Summary Judgment, Doc. 57 and the Joint Motion for Continuance, Doc. 51 are Moot.

SIGNED at Houston, Texas, this 30th day of September, 2017.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE